IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRAD M. CARLSON, | ) |
|     Plaintiff, | ) |
| | )   Case No. 13 CV 5207 |
| v. | ) |
| | )   Judge Robert M. Dow, Jr. |
| RICHARD NIELSEN, et al., | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on two motions to dismiss, one filed by Defendants Richard Nielsen, Thomas Peterson, and Robin Zander to dismiss Counts II, III, IV, VI, and VII of the second amended complaint [88] and the other brought by Defendants Cheap Trick, Inc., Carlos, Nielsen, Petersson & Zander, LLC, Cheap Trick Unlimited, Inc., Cheap Trick Touring, Inc., Cheap Trick Merchandising, Inc., ZPN&C, Inc., and ZPN&C, Inc. (collectively, the "Corporate Defendants") to dismiss Count II [92]. For the reasons set forth below, the Court denies both motions [88 and 92].

**I.     Background[1]**

This action concerns the rock band Cheap Trick and claims asserted by its former drummer, Brad M. Carlson (also referred to at times as "Carlos"), against the remaining band members, Nielsen, Peterson, and Zander. Carlson's claims arise out of the alleged breach of an agreement between the parties called the "Live Performance Agreement." According to Carlson, in Section 2 of that agreement, Defendants promised that, although Carlson was no longer required to tour with the Band, he would "continue to receive all remuneration due to him under [other agreements between the parties] * * * without delay, penalty or offset." Defendants

---

[1] The facts are drawn from Plaintiff's second amended complaint. For the purposes of Defendants' motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

allegedly breached this promise by failing to pay Carlson hundreds of thousands of dollars which he is owed. Carlson also has asserted derivative claims for trademark infringement on behalf of two of the Cheap Trick Companies, based upon the Individual Defendants' allegedly unauthorized use of trademarks owned by those companies.

### A.     The Live Performance Agreement

Cheap Trick is an unincorporated joint venture (*i.e.,* a partnership) between Plaintiff Carlson and Defendants Nielsen, Peterson and Zander. The Corporate Defendants (also referred to as the "Cheap Trick Companies") are corporate entities which are jointly owned by the four band members. Each band member owns 25% of the shares of each of the Cheap Trick Companies. The band conducts much of its business through the Cheap Trick Companies.

On or about March 14, 2010, the three Individual Defendants entered into a contract with Carlson. The complaint alleges that the band members entered into this contract individually and on behalf of the Cheap Trick Companies. The agreement referenced and ratified the terms of the shareholder agreements and other extant contracts between and among the band members. Pursuant to Section 2 of the agreement, Carlson and Defendants agreed that, while "[Carlson] remains ready, willing and able to perform his obligations under the Agreements * * * Carlos shall not be required to perform, nor shall he perform, as a touring musician with the artist known as 'Cheap Trick' in connection with any and all concert dates and/or live performances following the date hereof * * *." Section 2 further provides that Carlson will nonetheless "continue to receive all remuneration due to him under the Agreements (including, without limitation, all remuneration that would have been paid to him had he fully performed at all of the Live Performances) without delay, penalty or offset." According to the complaint, the payment obligation under Section 2 applies to all Defendants. Carlson alleges that Defendants breached

Section 2 of the agreement when they stopped paying monies owed to him under the agreement.

### B. Infringement Allegations

The complaint alleges that in 2005 or 2006, ZPN&C, Inc. of Illinois became the exclusive owner of federal trademark registrations for the use of the name "Cheap Trick" for entertainment services and clothing (collectively, the "Cheap Trick Marks"). According to Plaintiff, he is uncertain whether ZPN&C, Inc. of Illinois currently owns the Cheap Trick Marks, or whether they have been transferred to ZPN&C, Inc. of Florida, allegedly because Defendants refuse to provide Carlson with access to the business files and other records of the Cheap Trick Companies. Thus, the second amended complaint alleges in the alternative that each of these two entities is the current owner of the Cheap Trick Marks.

Carlson is a co-owner of ZPN&C, Inc. of Illinois and ZPN&C, Inc. of Florida. Plaintiff alleges that the Individual Defendants are improperly making numerous unauthorized personal uses of the Cheap Trick Marks without authorization by ZPN&C, Inc. of Illinois or ZPN&C, Inc. of Florida.

## II. Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). As previously noted, reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon

which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.")

### III. Analysis

#### A. Trademark Infringement Claims

Counts III through VII in the SAC set forth derivative claims for trademark infringement, which Carlton has asserted against the Individual Defendants for their allegedly unauthorized personal uses of the Cheap Trick Marks. Carlson asserts these claims on behalf of ZPN&C, Inc. of Florida, and, in the alternative, on behalf of ZPN&C, Inc. of Illinois. According to Plaintiff, he has pled these claims in the alternative because he does not know which of these two corporations is the current owner of the Cheap Trick Marks. Carlson further alleges that Defendants have refused to provide him with access to the business files, records, documents, and other assets of the Cheap Trick Companies, despite Carlson's many requests.

The Individual Defendants have moved to dismiss Plaintiff's derivative trademark infringement claims, arguing that it is "inconsistent" for Carlson to allege in the alternative that two different corporations own the Cheap Trick Marks. Defendants' argument is clearly refuted by the Federal Rules of Civil Procedure and case law. Rule 8(d)(2) states that a party "may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones * * * [T]he pleading is sufficient if any one of them is sufficient. See also Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Moreover, "[a]t the pleadings stage, plaintiffs are allowed to plead in the alternative, even if this creates inconsistencies * * * * Plaintiffs may plead inconsistent facts * * * as long as plaintiffs are 'legitimately in doubt about the facts in question.'" *Ollins v. O'Brien*, 2005 WL 730987, at *10 (N.D. Ill. March 28, 2005) (citing *Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir. 2001); *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996)). Plaintiff represents that he is legitimately doubtful as to whether ZPN&C, Inc. of Illinois or ZPN&C, Inc. of Florida owns the Cheap Trick Marks and that discovery is needed to know whether the Cheap Trick Marks may have been assigned from ZPN&C, Inc. of Illinois to ZPN&C, Inc. of Florida.[2] This is sufficient at the motion-to-dismiss stage. Once Plaintiff determines in the course of discovery which entity owns the Cheap Trick Marks, Plaintiff's contentions can be narrowed. The Individual Defendants' motion to dismiss Counts III, IV, VI, and VII is denied.

---

[2] Carlson alleges that he knows that ZPN&C, Inc. of Illinois owned the Cheap Trick Marks as of 2006, but he alleges that he has been informed and believes that those trademarks may have been transferred (or assigned) to ZPN&C, Inc. of Florida at a subsequent date based upon the following facts: (1) ZPN&C, Inc. of Illinois was dissolved as of 2008; and (2) ZPN&C, Inc. of Florida was incorporated shortly thereafter in 2009. Defendants quibbles with Carlson's allegations are more appropriate for a summary judgment motion.
.

**B.      Breach of Contract**

In Count II, Plaintiff alleges that both the Individual and Corporate Defendants breached the Live Performance Agreement. Both the Individual and Corporate Defendants have moved to dismiss Count II.

*1.      Individual Defendants*

Carlson alleges that because (i) the Individual Defendants are signatories to the Live Performance Agreement in their individual capacities (as well as their corporate capacities) and (ii) the Live Performance Agreement promises that Carlson "shall continue to receive all remuneration due to him" under certain enumerated agreements, the Individual Defendants are contractually obligated under the Live Performance Agreement to direct that the Cheap Trick Companies continue to pay Carlson all remuneration due to him thereunder, and to do nothing to prevent such payments from being made. According to Carlson, the Individual Defendants breached their contractual obligation to Carlson by "instructing the * * * [Corporate] Defendants to refrain from paying Carlos all remuneration due to him."

The Individual Defendants seek dismissal of Count II, arguing that the Live Performance Agreement obligates only the Corporate Defendants to pay remuneration to Carlson and "does not obligate the [Individual] Defendants to do anything." Under Illinois law, "[w]hen an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound." *Wottowa Ins. Agency, Inc. v. Bock,* 472 N .E.2d 411, 413 (Ill. 1984); *accord Sullivan v. Cox,* 78 F.3d 322, (7th Cir. 1996). The converse also is true. "An officer who signs his name, without more, is individually liable on the contract." *84 Lumber Co. v. Denni Constr. Co.,* 571 N.E.2d 231, 233 (Ill. App. Ct. 1991) (citing *Zella Wahnon & Assocs. v. Bassman,* 398 N.E.2d 968 (Ill. App. Ct.

6

1979) (owner liable in personal capacity for contract that did not mention corporate entity and was signed without indicating representative capacity); see also *Carollo v. Irwin,* 959 N.E.2d 77, 91 (Ill. App. Ct. 2011) (stating "where an agent signs [a] contract in his own name and the contract nowhere mentions the existence of agency or the identity of the principal, the agent is personally liable."). Thus, if no contrary intent is reflected in the document, an individual's signature without any indication that he is signing in his corporate capacity binds the individual, not the corporation. On the other hand, if an individual signs solely "on behalf of" a corporation, then the individual is not personally liable.

In this case, the agreement unambiguously reflects that the individual band members entered into the Live Performance Agreement in their individual capacities, as well as in their capacity as agents of the Cheap Trick Companies. For instance, the introductory paragraph of the Live Performance Agreement states that the agreement is between all band members. Further, the signature blocks state that each band member signed the agreement "individually and on behalf of" the Cheap Trick Companies. Finally, Paragraph 4 of the agreement states that each band member "has the right and power to enter into this [agreement] on behalf of himself" and the Cheap Trick Companies. The plain language of the agreement thus suggests that the band members were entering into the agreement individually *and* as agents of the Cheap Trick Companies. See, *e.g*, *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 985 (1st Dist. 1997) ("[W]here [a party] signed the agreement in his own name and tendered it to [the opposing side] there is no reason in law or logic why he should not be individually bound by its terms."). While Defendants are correct that directors and officers are not personally liable on contracts signed by them for and on behalf of the corporation, here, the band members expressly bound themselves individually. It remains to be seen what obligations the band members incurred by signing the

agreement, but the Individual Defendants' argument that they did not bind themselves individually is belied by the plain language of the agreement. The Individual Defendants' motion to dismiss Count II is denied.

### 2. *Corporate Defendants*

Count II also alleges that the Corporate Defendants breached their promise under Paragraph 2 of the Live Performance Agreement that Carlson "shall continue to receive all remuneration due to him" under twelve enumerated agreements "without delay, penalty or offset" by failing to pay Carlson all remuneration due to him under the Agreements. The Corporate Defendants do not dispute that they are parties to the Live Performance Agreement. Nor do they dispute that they have an obligation under the Live Performance Agreement to pay Carlos "all remuneration due to him" under the Agreements without "delay, penalty or offset." Nonetheless, the Corporate Defendants contend that Carlson has failed to plead a valid claim against them for breach of contract.

First, the Corporate Defendants argue that Carlson fails to allege the terms of the agreement that the Cheap Trick Companies purportedly breached. Quite the opposite, as set forth above, Carlson has explicitly alleged that the Corporate Defendants have breached Paragraph 2 of the agreement.

Second, the Corporate Defendants argue that the complaint fails to provide sufficient background detail regarding the agreements, specifically "what agreements he is referring to, who the parties are to those agreements, when the agreements were executed, what the terms of the agreements were, or and what the agreements required from the Cheap Trick Companies or from [Carlson] himself." Again, Defendants' argument is without merit. Initially, Plaintiff had no obligation to attached the additional agreements to his complaint. Further, the Corporate

8

Defendants do not (and cannot possibly) contend that they do not possess copies of the additional agreements, and thus their claim that they lack adequate notice of the terms of the agreements rings hollow. In any event, the information which the Corporate Defendants claim to be missing from Count II simply is not required by Fed. R. Civ. P. 8(a), which merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief," or by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts routinely hold that breach-of-contract allegations with less detail than those in Plaintiff's complaint are sufficient to survive a motion to dismiss. See, *e.g.*, *Urlacher v. Dreams, Inc.*, 2010 WL 669449, at *2 (N.D. Ill. Feb. 22, 2010) ("Dreams is not required at the pleadings stage to identify the exact provision of the Agreement that Urlacher violated."); *Facility Wizard Software, Inc. v. Southeastern Tech. Servs., LLC*, 647 F. Supp. 2d 938, 950 (N.D. Ill. 2009) (denying motion to dismiss breach-of-contract claim, noting that the movant "cites to no proposition, and the court is aware of none, that requires a plaintiff to identify which contract provision it believes was breached so long as the contract itself is identified"); *Buffet Crampon S.A.S. v. Schreiber & Keilwerth*, 2009 WL 3675807, at * (N.D. Ind. Nov. 2, 2009) (same). The Corporate Defendants' motion to dismiss is denied.

IV. **Conclusion**

For these reasons, the Court denies Defendants' motions to dismiss [88 and 92].

Dated: September 23, 2014

_____
Robert M. Dow, Jr.
United States District Judge

9